## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| AMNET ESOP CORPORATION d/b/a AMERICAN MORTGAGE NETWORK, | |
| Plaintiff, | |
| v. | Action No.: 2:23-CV-00010-RWS |
| CROSSCOUNTRY MORTGAGE, INC., SPENCER THOMAS, and WILLIAM MYERS, | |
| Defendants. | |

## BRIEF IN SUPPORT OF DEFENDANT WILLIAM MYERS'S
## <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

94986726.2

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................1

THE AMENDED COMPLAINT .........................................................................3

LEGAL STANDARDS .........................................................................................8

ARGUMENT ........................................................................................................9

I.  The Amended Complaint Fails to State a Civil RICO Claim under either State or Federal Law or a Conspiracy to Violate RICO (Counts Nine, Eleven, and Twelve). ..........................................................................................9

II. The Amended Complaint Fails to State a GTSA Claim or Conspiracy Claim against Myers (Counts Seven and Ten) ...............................................14

CONCLUSION ...................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Federal Cases**

*AFL-CIO v. City of Miami*,
   637 F.3d 1178 (11th Cir. 2011) ..............................................................9

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
   416 F.3d 1242 (11th Cir. 2005) ..............................................................9

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ..............................................................9

*Ambrosia Coal & Constr. Co. v. Pages Morales*,
   482 F.3d 1309 (11th Cir. 2007) .......................................................10, 13

*Attia v. Google LLC*,
   2018 WL 2971049 (N.D. Cal. June 13, 2018)...................................5, 13

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001).............................................................................10

*Cisneros v. Petland, Inc.*,
   972 F.3d 1204 ......................................................................................10

*Cox v. Nobles*,
   15 F.4th 1350 (11th Cir. 2021) ..............................................................9

*Durham v. Business Mgmt. Assoc.*,
   847 F.2d 1505 (11th Cir. 1988) .......................................................10, 13

*Eckart v. Allstate Northbrook Indem. Co.*,
   No. 1:22-CV-00281-JPB, 2023 U.S. Dist. LEXIS 28039 (N.D. Ga.
   2023) ...................................................................................................11

*Feldman v. Am. Dawn, Inc.*,
   849 F.3d 1333 (11th Cir. 2017) ...........................................................14

*Franklin v. Curry*,
   738 F.3d 1246 (11th Cir. 2013) ..............................................................8

*Godelia v. Doe 1*,
   881 F.3d 1309 (11th Cir. 2018) ........................................................................8

*Jallali v. Sun Healthcare Grp.*,
   667 F. App'x 745 (11th Cir. 2016) .................................................................13

*Marrache v. Bacardi U.S.A., Inc.*,
   17 F.4th 1084 (11th Cir. 2021) ........................................................................9

*Ray v. Spirit Airlines, Inc.*,
   836 F.3d 1340 (11th Cir. 2016) ........................................................10, 11, 12

*Sarfo v. PNC Bank, N.A.*,
   2013 WL 12109238 (N.D. Ga. July 9, 2013) ..................................................7

*Sedima S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) .......................................................................................10

*U.S. Sec. Assocs., Inc. v. Lumby*,
   2019 WL 82277263 (N.D. Ga. Sept. 25, 2019) ............................................15

*United States v. McCarrick*,
   294 F.3d 1286 (11th Cir. 2002) .......................................................................7

*United States v. Turner*,
   871 F.2d 1574 (11th Cir. 1989) .......................................................................6

**State Cases**

*Avnet, Inc. v. Wyle Labs., Inc.*,
   437 S.E.2d 302 (Ga. 1993) ..............................................................................8

*McIntee v. Deramus*,
   722 S.E.2d 377 (Ga. Ct. App. 2012) ..............................................................16

**Statutes**

18 U.S.C. § 1343 ...............................................................................................6

18 U.S.C. § 1344 ...............................................................................................7

18 U.S.C. § 1961 .............................................................................................10

18 U.S.C. § 2314 ...............................................................................................6

O.C.G.A. § 16-8-1....................................................................................................7

O.C.G.A. § 16-9-93..................................................................................................7

O.C.G.A. § 18-8-102................................................................................................7

**Court Rules**

Federal Rule of Civil Procedure 8 ..........................................................................16

Federal Rule of Civil Procedure 9 ...............................................................6, 10, 13

Federal Rule of Civil Procedure 11 ..........................................................................5

Federal Rule of Civil Procedure 12 ...............................................................12, 15

## INTRODUCTION

AmNet's first Complaint outlined a common business dispute involving its former employee, Spencer Thomas ("Thomas"), and his new employer (and AmNet's competitor), CrossCountry Mortgage, LLC ("CrossCountry"). Because the dispute was not newsworthy,[1] AmNet trumped up allegations that CrossCountry and its employee, William Myers ("Myers"), misappropriated trade secrets and violated state and federal RICO statutes in furtherance of a grand civil conspiracy.

The Complaint suffered from numerous fatal deficiencies outlined in Defendants' motions to dismiss. AmNet's counsel reviewed the motions and drafted an Amended Complaint to dodge the legal roadblocks therein. But crafty wordsmithing cannot protect rank speculation and conclusion from the scrutiny required by federal pleading standards. AmNet's Amended Complaint remains fatally flawed.

AmNet struggles to prop Myers up as a strawman, a third-party who conspired with CrossCountry to engage in a RICO "enterprise." But AmNet's fiction is revealed in number of ways. First, AmNet is unable to allege any *facts* supporting

---

[1] Notably, AmNet's counsel is a regular contributor to the National Mortgage News website. This case initially was filed on Tuesday, January 10, 2023. The very next day, the following article had already been published by National Mortgage News:https://www.nationalmortgagenews.com/news/california-lender-accuses-crosscountry-of-racketeering. It is clear that this was nothing more than an attempt by AmNet and its counsel to leverage additional pressure through media coverage.

its contention that Myers or the "Transition Team" were involved in Thomas's transition to CrossCountry. The Amended Complaint is devoid of *facts* detailing the who, what, where, and when of the interactions which AmNet asserts form the basis of the RICO violations or the conspiracies. Absent *facts* connecting Myers (or the Transition Team) to Thomas's leaving AmNet or joining CrossCountry, the claims against Myers fail.

But even if this Court (like AmNet) *assumes* that Myers and/or the "Transition Desk" were involved in Thomas's transition to CrossCountry, such activity could not, as a matter of law, serve as the basis for RICO (or conspiracy) claims. Myers was, at all relevant times, an employee of CrossCountry acting in the course and scope of his employment. AmNet's Amended Complaint admits as much. CrossCountry can only act by and through its agents, including its employees, and Myers cannot, as a matter of law, constitute a separate member of an "enterprise" sufficient to satisfy the state and federal RICO statutes.

Finally, AmNet has also failed to plead any *facts* showing that Myers has committed any predicate act whatsoever, let alone "criminal conduct of a continuing nature." Beyond bare citations to criminal statutes and inappropriate references to unrelated civil suits, AmNet provides nothing of substance. Myers, a CrossCountry employee simply doing his job, is a victim of AmNet's ambition to amplify this case for perceived strategic gain. AmNet's claims against Myers must be dismissed.

## THE AMENDED COMPLAINT

Spencer Thomas only began working for AmNet as a loan officer in 2019.[2] A short time later, in 2022, Thomas left AmNet for CrossCountry.[3] AmNet's Amended Complaint asserts that during his transition to CrossCountry, Thomas worked to "divert" borrowers with whom he had been working while at AmNet,[4] that Thomas disclosed personal information about prospective borrowers to CrossCountry while holding himself out to borrowers as an AmNet employee,[5] and that Thomas solicited other AmNet employees to join him in leaving for CrossCountry.[6]

In a transparent attempt to manufacture involvement in this case, AmNet characterizes Myers as the person at CrossCountry who "orchestrated and oversaw" the allegedly improper activities of CrossCountry and Thomas.[7] AmNet goes on to claim that Thomas left AmNet with Myers's "knowledge and encouragement" and that Thomas used the "practices, procedures and instrumentalities implemented and supervised by Myers" to effectuate an alleged theft of AmNet's trade secrets.[8] Obviously, these conclusory statements evidence AmNet's *theory*, but they lack factual value. No dates, no times, no e-mails, no phone calls, no statements, no facts.

---

[2] AmNet's Amended Complaint [Dkt. No. 29] ¶ 12.
[3] *Id.* ¶ 26.
[4] *Id.* ¶¶ 29–34, 62–64.
[5] *Id.* ¶¶ 82, 113.
[6] *Id.* ¶ 35.
[7] *Id.* ¶ 4.
[8] *Id.* ¶ 29.

Nothing in AmNet's Amended Complaint connects Myers (or the Transition Desk) with Thomas. And the Court should not give AmNet the benefit of filling this massive void.

AmNet's Amended Complaint, moreover, still does not allege that Myers personally interacted with Thomas, that he instructed any member of the "Transition Desk" to interact with Thomas, that Myers knew or understood that Thomas worked for AmNet, or that Myers knew who Thomas even was. The only allegation even remotely touching upon this is AmNet's addition to the Amended Complaint that "upon information and belief" Thomas diverted AmNet borrowers to CrossCountry using the practices and procedures Myers implemented and supervised.[9]

AmNet's *theory* is clear: (1) CrossCountry has a "Transition Desk" that assists loan originators during their transition from a prior employer to CrossCountry; (2) Myers is the CrossCountry employee in charge of the "Transition Desk"; (3) Thomas transitioned from AmNet to CrossCountry; and therefore, (4) CrossCountry's "Transition Desk" **must have** facilitated his transition to CrossCountry. But AmNet cannot bridge the inferential leap between (3) and (4).

And even if the Court **assumes** that Myers assisted Thomas's transition to CrossCountry, the Amended Complaint makes clear that Myers was simply a CrossCountry employee doing his job. The Amended Complaint describes the

---

[9] *Id.* ¶ 29.

Transition Desk as "a deliberate system and infrastructure" and a "department" maintained by both "Myers and CrossCountry."[10] And the supposed activities of the Transition Desk—"recruiting of loan officers and facilitation, processing, funding and closure of loans"[11]—is CrossCountry's very business. Finally, AmNet asserts that Craig Montgomery, CrossCountry's Chief Production Officer, "has at all relevant times overseen William Myers in his work supervising the Transition Desk."[12] Putting inflammatory conclusions aside, the Amended Complaint makes clear that Myers was a CrossCountry employee advancing CrossCountry's fundamental interests while being supervised by a CrossCountry executive.

AmNet's attempt to plead RICO predicate acts is even more tenuous. First, the Amended Complaint includes multiple improper references to other lawsuits, and characterizes those cases as evidence that CrossCountry and Myers have engaged in improper recruiting and onboarding behavior, at least in part, through its "Transition Desk."[13] The existence of a handful of distinct lawsuits has zero factual value.[14] This Court should decline AmNet's invitation to simply rely on allegations

---

[10] Am. Compl. ¶¶ 33, 42, 127.

[11] *Id.* ¶ 134.

[12] *Id.* ¶ 44.

[13] *Id.* ¶ 39, 42, 49, 51–56, 61.

[14] Courts do not permit litigants to simply recite allegations from a pleading in another action to support a claim in the present case. *See Attia v. Google LLC*, 2018 WL 2971049, at *14–15 (N.D. Cal. June 13, 2018) (collecting cases) ("Given the nondelegable duty imposed on attorneys under Rule 11, ***courts routinely strike allegations that rely exclusively on the analysis and investigation of different***

taken from pleadings in other cases to in order plead a "pattern of racketeering activity." This Court should ignore also AmNet's bald allegation that Myers "divert[ed] loans and trade secrets from numerous competitors as well."[15]

Next, AmNet cites various federal statutes in a half-hearted attempt to plead predicate acts. First, AmNet cites 18 U.S.C. § 1343, the federal wire fraud statute, followed by the conclusory statement that "Defendants have utilized mails and wires to perpetrate a fraud."[16] But, in terms of actual substance, AmNet does not describe any false statement Myers made to AmNet (or anyone else), any reliance on that false statement, or any injury resultant from said reliance.

Next, AmNet cites the federal statutes dealing with interstate transportation of money taken by fraud, 18 U.S.C. § 2314, which "makes illegal the transportation in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud."[17] But the Amended Complaint fails to explain any transfer, applicable funds, or fraud, let alone sufficiently allege the supposed fraud with particularity under Rule 9(b).

AmNet then cites the federal statute dealing with fraud against a financial

---

*attorneys in different actions*.") (emphasis added).
[15] Am. Compl. ¶ 42.
[16] *Id*. ¶ 126.
[17] *United States v. Turner*, 871 F.2d 1574, 1578 (11th Cir. 1989).

institution, 18 U.S.C. § 1344, which requires a particularized allegation that the defendant defrauded a financial institution "by means of material false pretenses, representations or promises."[18] But AmNet has failed to allege any false statement or representation that was made to AmNet as necessary to establish a RICO predicate offense.

AmNet also cites to Georgia's residential mortgage fraud statute (O.C.G.A. § 18-8-102), but fails to set forth any particular false representation to borrowers. Moreover, as discussed in CrossCountry's motion, this statute is not suited to the facts of this case, as it appears to be exclusively applied to cases of fraud in the central workings of the "mortgage lending process," including false statements in a mortgage application, credit check, or appraisal.[19]

Finally, the Amended Complaint fails to plead any predicate act for violation of the Georgia statutes codifying theft (O.C.G.A. § 16-8-1) and computer theft (O.C.G.A. § 16-9-93). The only "property" Myers is alleged to have been taken is customer information that AmNet contends are trade secrets.[20] AmNet alleges only

---

[18] *United States v. McCarrick*, 294 F.3d 1286, 1290 (11th Cir. 2002).

[19] *See, e.g.*, *Sarfo v. PNC Bank, N.A.*, 2013 WL 12109238, at *10 (N.D. Ga. July 9, 2013) (finding no viable mortgage fraud claim where plaintiff "[did] not allege that [defendants] made any deliberate misrepresentations during the mortgage lending process that would constitute residential mortgage fraud under Georgia law").

[20] *See* Am. Compl. ¶ 150 (alleging that Defendants exceeded authorized computer access "for the purpose of obtaining competitors' trade secrets").

that Thomas disclosed *the customer relationships* to Myers.[21] But the Georgia Supreme Court has held that an employee's knowledge of customer relationships is not the property of the employer at all, let alone a proprietary trade secret.[22]

AmNet's Amended Complaint fails to plead facts from which this Court could reasonably conclude that: (1) Myers was involved with Thomas at all, (2) Myers was doing anything other than his job, or (3) Myers committed any "predicate act" under RICO.

## LEGAL STANDARDS

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Godelia v. Doe 1*, 881 F.3d 1309, 1316 (11th Cir. 2018). "The plausibility standard is met only where the facts alleged enable the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). In measuring the Amended Complaint against this standard, "[m]ere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Id.*

For each asserted claim, AmNet must set forth plausible factual allegations

---

[21] Am. Compl. ¶ 98.

[22] *Avnet, Inc. v. Wyle Labs., Inc.*, 437 S.E.2d 302, 304 (Ga. 1993) ("Knowledge on the part of the employee concerning the names and addresses of customers is not the property of the employer.").

that establish all "the material elements of a cause of action." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011). Well-pleaded facts must demonstrate "more than a sheer possibility that a defendant has acted unlawfully," and facts "merely consistent with a defendant's liability" are not enough. *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1099 (11th Cir. 2021). A court should "dismiss a complaint if it rests only on conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts." *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021).

Although reasonable inferences are made in a plaintiff's favor in considering a motion to dismiss, "unwarranted deductions of fact are not admitted as true[.]" *See Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (citation and internal quotation marks omitted). In addition, courts may infer from the factual allegations in the complaint an "obvious alternative explanation" that suggests lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010)(citation omitted).

## ARGUMENT

### I.   The Amended Complaint Fails to State a Substantive Civil RICO Claim under either State or Federal Law or a Conspiracy to Violate RICO (Counts Nine, Eleven, and Twelve).

To state a civil RICO claim "a plaintiff must allege each of the following four

elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Durham v. Business Mgmt. Assoc.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *see also Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1221 (noting that the federal and Georgia state RICO acts are essentially identical and that dismissal under the federal statute will warrant dismissal under the state). Importantly, when bringing a RICO claim, a plaintiff is held to Rule 9(b)'s heightened pleading standard. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity.").

AmNet's ill-conceived RICO claims against Myers are fatally flawed from the outset, as AmNet fails to plead any "enterprise" as a matter of law. For RICO purposes, an "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). As the Eleventh Circuit has observed, however, "[t]he Supreme Court has made it crystal clear that the racketeering enterprise and the defendant **must be two separate entities**." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1355 (11th Cir. 2016) (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161–62 (2001)) (emphasis added).

"Significantly, to state a civil RICO claim, a plaintiff must establish a

distinction between the defendant 'person' and the 'enterprise' itself." *Id.* Thus, "a defendant corporation cannot be distinct for RICO purposes from its own officers, agents, and employees **when those individuals are operating in their official capacities for the corporation**." *Id.* (emphasis added); *see also id.* at 1357 ("a corporate defendant acting through its officers, agents, and employees is simply a corporation," and "[l]abeling it as an enterprise as well would only amount to referring to the corporate 'person' by a different name"). In other words, "a defendant corporation cannot form a RICO enterprise with its own employees or agents who are carrying on the normal work of the corporation." *Id.* at 1356. Accordingly, the controlling law of this Circuit is that "plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees." *Id.* at 1357; *accord Eckart v. Allstate Northbrook Indem. Co.*, No. 1:22-CV-00281-JPB, 2023 U.S. Dist. LEXIS 28039, *13 (N.D. Ga. 2023).

Throughout its Amended Complaint, AmNet repeatedly admits that Myers is an employee of CrossCountry, and that that scope of his employment involves heading the "Transition Desk" for CrossCountry.[23] And it is Myers' actions as head

---

[23] *See, e.g.*, Am. Compl. ¶¶ 4, 29, 32–33, 39, 41, 43–44, 47–48, 50.

of the "Transition Desk" that AmNet essentially characterizes as violating RICO.[24] Specifically, AmNet claims that Myers "is responsible for overseeing the complete operations of the 'Transition Desk' and maintaining practices intentionally and specifically designed to facilitate the theft of competitors' trade secrets," that he does so in accordance with practices facilitated by CrossCountry, and that the practices of Myers and CrossCountry are an unlawful enterprise with a "common purpose" under the Racketeer Influenced and Corrupt Organizations Act."[25]

AmNet's RICO claims are rooted in an alleged "enterprise" between CrossCountry and Myers, and under the plain allegations of the Amended Complaint, are premised on conduct that (if it actually took place) was fully within the course and scope of Myers's employment at CrossCountry.  As such, AmNet's RICO claims are foreclosed by the Eleventh Circuit's ruling in *Ray*. Because AmNet has failed to plead the existence of a RICO "enterprise" that is distinct from Myers, AmNet's RICO claims must be dismissed pursuant to Rule 12(b)(6).

Setting aside this glaring and fully dispositive deficiency, as CrossCountry aptly notes in its motion, AmNet has also failed to sufficiently plead RICO claims for additional and wholly independent reasons—AmNet does not plead facts to establish the requisite predicate acts, or a pattern of racketeering activity. *See*

---

[24] *Id*. ¶¶ 10, 55–59.
[25] *Id. ¶¶* 58–59.

*Durham*, 847 F.2d at 1511 (setting forth the elements of a RICO claim). Short of peppering the Amended Complaint with conclusory allegations of trade secret theft, and using words like "stealing," "mails and wires," "money taken by fraud," and "defrauding a financial institution," there is a lack of any actual facts to support that such things actually occurred or that it constituted criminal conduct, as necessary to state a civil RICO claim.[26] AmNet's citation to various criminal codes does not save its claims either, as again there are no facts pleaded to actually support such conduct, let alone facts that describe "the who, what, where, when, and how" of the supposed predicate conduct as required by Rule 9(b).[27]

This Court should also disregard AmNet's citation to other lawsuits as an attempt to plead racketeering activity. *See Attia*, 2018 WL 2971049, at *14–15 (noting that courts routinely strike allegations that rely on the analysis and investigation of other attorneys in different cases). That CrossCountry has been sued in other cases does not demonstrate a pattern of racketeering activity sufficient to support AmNet's civil RICO claims in this case. Furthermore, AmNet's mention of a handful of borrowers who did not close loans with AmNet similarly fails to establish a pattern of racketeering activity. Notably, AmNet does not even allege a

---

[26] *Id.* ¶ 126.

[27] *Id.* ¶ 141–42. *See also Ambrosia*, 482 F.3d at 1316 (civil RICO claims are subject to Rule 9(b)'s heightened pleading standard); *Jallali v. Sun Healthcare Grp.*, 667 F. App'x 745, 746 (11th Cir. 2016) (describing Rule 9(b)'s requirements).

single concrete fact connecting Myers, Montgomery, or any other person purportedly associated with CrossCountry's "Transition Desk" to Thomas. As set forth above, AmNet pleads the existence of the "Transition Desk" and pleads that Thomas transitioned from AmNet to CrossCountry. AmNet is completely unable to plead a single fact suggesting that any person associated with the "Transition Desk" ever interacted with Thomas. Thus, there is no factual connection between Myers/CrossCountry, the "Transition Desk," and Thomas.

Lastly, conspiracy claims under RICO must be premised upon an underlying violation of the racketeering laws. As argued herein, and in additional detail in CrossCountry's motion to dismiss, AmNet has failed to allege viable RICO claims. Accordingly, any claim against Thomas for being part of some alleged RICO conspiracy necessarily fails. *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1343 (11th Cir. 2017) (noting that a RICO conspiracy claim fails under state and federal law where the plaintiff fails to allege an underlying violation of the acts). Count Eleven must therefore be dismissed.

For these reasons, as well as for the reasons set forth in CrossCountry's motion to dismiss Counts Nine, Eleven, and Twelve (which Myers adopts and incorporates by reference herein), AmNet's RICO claims must be dismissed.

## II.   The Amended Complaint Fails to State a GTSA Claim or Conspiracy Claim against Myers (Counts Seven and Ten)

AmNet fails to allege ***any facts*** concerning Myers related to any of its

remaining causes of action. Nonetheless, AmNet superficially appears to include Myers in its GTSA and conspiracy claims (Counts Seven and Ten) by stating in the headings that these claims are brought "against All Defendants."  This practice is not appropriate, and both claims must be dismissed, as against Myers, pursuant to Rule 12(b)(6).

As for Count Seven, to state a plausible claim under the GTSA, AmNet must assert that (1) it had a trade secret; and (2) Myers misappropriated that trade secret. *U.S. Sec. Assocs., Inc. v. Lumby*, 2019 WL 82277263, at *10 (N.D. Ga. Sept. 25, 2019).  Here, the Amended Complaint does not allege the existence of a protected trade secret.  Even ignoring AmNet's failure to articulate the existence of protected trade secrets, the Amended Complaint is devoid of facts supporting the contention that AmNet took sufficient measures to protect the alleged trade secrets, or that Myers (or any person associated with the "Transition Desk") misused or misappropriated any such information. Such factual allegations are entirely deficient. As such, Count Seven must be dismissed as to Myers.[28]

As for Count Ten, to plead civil conspiracy under Georgia law, AmNet must allege that: "two or more persons combined either to do some act which is a tort, or

---

[28] Myers agrees with and incorporates herein all applicable arguments and authorities set forth in CrossCountry's Motion to Dismiss, including CrossCountry's analysis demonstrating that AmNet has completely failed to plead facts supporting the existence of a trade secret, and CrossCountry's analysis of AmNet's failure to plead a civil conspiracy, which Myers also addresses below.

else to do some lawful act by methods which constitute a tort." *McIntee v. Deramus*, 722 S.E.2d 377, 379 (Ga. Ct. App. 2012). AmNet's civil conspiracy claim, even as amended, is deficient for at least two reasons. First, AmNet bases its conspiracy claim on the utterly conclusory allegation that "CrossCountry, Myers, and Thomas together reached an agreement to tortiously interfere" with AmNet's business,[29] without providing any supporting concrete facts. Indeed, the Amended Complaint never describes ***any*** interaction between Myers and Thomas, other than simply asserting that there was one. For the reasons already discussed above, such conclusory allegations fall well short of Rule 8's plausibility standard.

Second, even if AmNet's allegation regarding this supposed "agreement" was sufficient (it is not), the only alleged substantive tort to support AmNet's civil conspiracy claim is tortious interference (Count Five). But, as discussed in Thomas's and CrossCountry's Motions to Dismiss (which arguments Myers hereby adopts), AmNet fails to state any plausible tortious interference claim in the Amended Complaint. Without an underlying actionable tort, AmNet's civil conspiracy claim cannot survive dismissal. *McIntee*, 722 S.E.2d at 379.

Accordingly, because AmNet has failed to plead any factual connection between Myers and Thomas, or any underlying actionable tort, Count Ten does not come close to stating a plausible conspiracy claim and must be dismissed.

---

[29] Am. Compl. ¶ 138.

## **CONCLUSION**

Unfortunately, Myers is the victim of AmNet's attempt to weaponize the justice system. Confronted with the imminent collapse of its RICO claims (for numerous reasons including the complete lack of a cognizable RICO "enterprise"), AmNet took sharper aim at Myers's integrity. But because neither the law nor the truth is on AmNet's side, and because rank speculation and conclusion cannot replace facts, AmNet's Amended Complaint against Mr. William Myers should be dismissed in its entirety.


Dated: May 19, 2023                                Respectfully submitted,

                                                    _/s/Joshua D. Curry_____
                                                   Joshua D. Curry
                                                   Georgia Bar No. 117378
                                                   Lewis Brisbois Bisgaard Smith LLP
                                                   600 Peachtree St. NE, Suite 4700
                                                   Atlanta, GA 30308
                                                   Ph:     404.348.8585
                                                   josh.curry@lewisbrisbois.com

                                                   John R. Conley
                                                   Ohio Bar No. 84079
                                                   *(pro hac vice forthcoming)*
                                                   Lewis Brisbois Bisgaard & Smith LLP
                                                   1 Gojo Plaza, Suite 310
                                                   Akron, Ohio 44311
                                                   Ph:     330.272.0000
                                                   john.conley@lewisbrisbois.com

                                                   *Attorneys for Defendants*
                                                   *Spencer Thomas and William Myers*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(D), NDGa I hereby certify that the foregoing paper was prepared using 14-point Times New Roman font.

Dated:  May 19, 2023                    */s/ Joshua D. Curry*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the date indicated below the foregoing document with any attachments was filed using the Court's CM/ECF System, which caused counsel of record for the parties to be served by electronic mail, as more fully reflected on the notice of electronic filing.

Dated:  May 19, 2023                    */s/ Joshua D. Curry*